IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| SCHRADER-BRIDGEPORT INTERNATIONAL, INC. and SCHRADER ELECTRONICS, INC., <br> *Plaintiffs,* <br><br> v. <br><br> CONTINENTAL AUTOMOTIVE SYSTEMS US, INC., <br> *Defendant.* | No. 6:11–cv–00014 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

Defendant, through counsel, moves the Court to transfer this patent infringement action to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). The Court conducted a hearing on December 15, 2011 in Lynchburg, Virginia. Having considered the arguments and authorities set forth by the parties, I will grant Defendant's Motion and transfer the case to the Eastern District of Michigan.

I. BACKGROUND

This suit features two named Plaintiffs, Schrader-Bridgeport International, Inc. ("Schrader-Bridgeport") and Schrader Electronics, Inc. ("Schrader Electronics"). Both Plaintiffs are commonly owned within the same corporate family.[1] Pls.' Opp'n 3. Both Plaintiffs are also engaged in, among other things, the tire pressure monitoring systems ("TPMS") trade. By way of background, a TPMS is an electronic system that detects when one or more of a vehicle's tires is significantly under-inflated and illuminates a low tire pressure warning indicator. *See, e.g.*, 49

---

[1] At the December 15th hearing, the parties disputed whether Schrader Electronics was a "parent" or a "sister" of Schrader-Bridgeport (Defendant took former position, while Plaintiffs took the latter). Because my decision to transfer the case does not turn on the formal resolution of that dispute, and I do not take it up.

- 1 -

C.F.R. § 571.138 (2010). TPMS capabilities are federally mandated for new vehicles. *See id.* at § 585.51–68 (2010). Together, Plaintiffs allege that one of Defendant's TPMS products, the REDI-Sensor, infringes on United States Patent No. 7,518,495 (the "'495 patent"), entitled "Universal Tire Pressure Monitor." *See* Def.'s Mem. Ex. A.

Plaintiff Schrader-Bridgeport is a corporation organized under the laws of Delaware, and its principal place of business is located in Altavista, Virginia. Compl. ¶ 1. Schrader-Bridgeport is engaged in the aftermarket[2] TPMS business; it is the exclusive licensee of the '495 patent. Pls.' Opp'n 1, 3–4. Schrader-Bridgeport alleges that the '495 patent covers one of the firm's aftermarket products, the EZ-Sensor.[3] Pls.' Opp'n 4. EZ-Sensors are manufactured and assembled to the tire pressure valves by another member of the Schrader corporate family in Northern Ireland, and then shipped to Schrader-Bridgeport in Altavista. *Id.* There, Schrader-Bridgeport packages the EZ-Sensors for distribution, and ships them to aftermarket TPMS customers throughout the United States. *Id.*

Plaintiff Schrader Electronics is a corporation organized under the laws of Delaware, and its principal place of business is located in Auburn Hills, Michigan. Compl. ¶ 2. Schrader Electronics is engaged in the original equipment manufacturer (OEM)[4] TPMS market. Pls.' Opp'n 3. Schrader Electronics is the owner of the '495 patent, and pursuant to Rule 19(a) of the Federal Rules of Civil Procedure, Schrader Electronics was joined as an indispensible party in this action. *Id.*

---

[2] Aftermarket TPMS channels include auto repairs shops, parts wholesalers, and retail outlets, which all purchase replacement TPMS sensors for resale to consumers. *See* Pls.' Opp'n 3–4.

[3] The EZ-Sensor, a registered trademark, is a replacement universal TPMS sensor. Like the "universal" television remote designed for use across a range of television brands, the EZ-Sensor is "universal" because it is designed to be compatible with a variety of vehicle makes and models that might each use different wireless signals for their original TPMS sensors. *See* Pls.' Opp'n 4.

[4] OEM TPMS channels are distinct from aftermarket channels, and include automobile manufacturers that purchase TPMS sensors to install during the manufacture of new vehicles. *See* Pls.' Opp'n 3.

The '495 patent was filed on November 18, 2003 and issued on April 14, 2009. Def.'s Mem. 2. The '495 patent lists six inventors who, at least according to Defendant,[5] all reside in the Eastern District of Michigan (and did so at all relevant times). Def.'s Mem. 3. Registered patent attorney Jeffrey M. Szuma, who practices with the Brooks Kushman law firm located in the Eastern District of Michigan, prosecuted the '495 patent. *Id.* Before the patent was even registered, the inventors assigned their interest in the patent to Lear Corporation of Southfield, Michigan, which is also located in the Eastern District of Michigan. Def.'s Mem. 2, Ex. E. Plaintiff Schrader Electronics purchased the '495 patent from Lear Corporation on November 1, 2010. Def.'s Mem. 3, Ex. E.

Defendant Continental Automotive Systems US, Inc. ("Continental") is also organized under the laws of Delaware, and its principal place of business is located in Auburn Hills, Michigan, at least according to Defendant. Def.'s Reply 1 n.1. In their Opposition, Plaintiffs contend that Continental's principal place of business is actually located in Allentown, Pennsylvania. Pls.' Opp'n 5. While the principal place of business inquiry would be a matter of dispositive importance if the Court were considering the propriety of exercising its diversity jurisdiction under 28 U.S.C. § 1332, it is not such a central issue in the 28 U.S.C. § 1404(a) transfer analysis. Other factors that I discuss in Part III, *infra*, including the specific location of relevant witnesses, matter more to the transfer analysis than does Continental's formal principal place of business. I therefore decline to decide whether Continental's principal place of business is located in Michigan, or in Pennsylvania, or elsewhere.

Continental conducts research, development, and engineering and operations testing for the REDI-Sensor in Troy, Michigan (both Auburn Hills and Troy are located in the Eastern

---

[5] At the December 15th hearing, Plaintiffs' counsel stated that one of the '495 patent's inventors, Mr. Tom Tang, can now be found in China.

District of Michigan). *Id.* Continental admits that it has a sales and marketing office for the REDI-Sensor in Allentown, Pennsylvania, and a manufacturing plant in Guadalajara, Mexico; however, Continental claims that all other facilities associated with the REDI-Sensor are located in the Eastern District of Michigan. *Id.* While Continental further admits to operating certain facilities in Virginia, it claims that none of those facilities are connected to the REDI-Sensor. *Id.* Instead, its Virginia facilities manufacture automobile injection and brake parts. *Id.* Finally, Continental argues that Plaintiffs' EZ-Sensor is itself more substantially connected to Michigan than it is to Virginia. *Id.* On that point, Continental claims that the only activities alleged in the Complaint that are related to the Western District of Virginia are Plaintiff Schrader-Bridgeport's sales and marketing activities. *Id.*

## II. APPLICABLE LAW

28 U.S.C. § 1404(a) arises out of the common-law doctrine of forum non conveniens and allows a transfer when a sister federal court is the more convenient place for trial of the action. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). The modern statute, however, is "more lenient in authorizing transfers than is the common law doctrine of forum non conveniens." *Akers v. Norfolk & W. Ry. Co.*, 378 F.2d 78, 79 (4th Cir. 1967). Specifically, § 1404(a) provides "[f]or the convenience of parties and witnesses in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." At bottom, "[s]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The party seeking transfer under § 1404(a) bears the burden of showing that the transfer is proper. *See e.g., Rockingham Precast, Inc. v. Am. Infrastructure-Md., Inc.*, Civil Action No. 5:11cv00024, 2011 WL 5526092, at *2 (W.D. Va. Nov. 14, 2011). *See also Sinochem*, 549 U.S. at 430 ("A defendant invoking forum non conveniens ordinarily bears a heavy burden in opposing the plaintiff's chosen forum."). In other words, "the primary right of the plaintiff to choose his forum . . . [is] a selection not easily to be overthrown." *Akers*, 378 F.2d at 80. When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor 'applies with less force.'" *Sinochem*, 549 U.S. at 430 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981)).

### III. DISCUSSION

#### A. Venue in the Eastern District of Michigan

As a threshold matter, transfer under § 1404(a) requires that a transferee venue be one in which the action could have been brought originally. 28 U.S.C. § 1400(b) governs venue in patent infringement cases.[6] It states that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *Id.* For purposes of venue, a defendant resides in any district in which it is subject to personal jurisdiction. 28 U.S.C. § 1391(c); *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1578 (Fed. Cir. 1990).

---

[6] Defendant's Memorandum incorrectly cites the general civil venue statute, 28 U.S.C. § 1391, in arguing that venue is proper in the Eastern District of Michigan. *See Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957) ("[28 U.S.C. § 1400(b)] is the sole and exclusive provision controlling venue in patent infringement actions, and that it is not to be supplemented by the provisions of [28 U.S.C. § 1391(c)].")

Both of the venue alternatives set forth in Section 1400(b) are satisfied.  First, the Eastern District of Michigan has personal jurisdiction over Continental because Continental "maintains a substantial operation in the Detroit area, including the research, development, and engineering testing operations of the accused REDI-Sensor product at its Troy, Michigan facility."  Def.'s Mem. 6.  Continental therefore "resides" in the Eastern District of Michigan.  Second, because Continental is principally located in the Eastern District of Michigan, and is alleged to have committed infringement (presumably there in the Eastern District of Michigan, among other places), the second venue alternative is also satisfied.  The case therefore could have been brought originally in the Eastern District of Michigan, and it is an appropriate transferee forum.

### B.  Weighing Conveniences and the Interests of Justice

Having determined that venue would have been appropriate in the Eastern District of Michigan, the next step is to balance the factors set forth in § 1404(a), while giving due weight to the Plaintiffs' originally chosen forum.  Defendant argues that the relevant factors overwhelmingly favor transfer to the Eastern District of Michigan.  Plaintiffs maintain that the suit belongs here in Schrader-Bridgeport's backyard, where Plaintiffs filed.

When it comes to undertaking this analysis, some federal courts have looked beyond the text of Section 1404(a), finding that the following list of non-exhaustive factors—which are the same factors relevant in a common law forum non conveniens analysis—are relevant in evaluating a motion to transfer venue:

> (1) the plaintiff's choice of forum; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process for attendance of unwilling witnesses; (4) the cost of obtaining attendance of willing witnesses; (5) the possibility of viewing premises, if applicable; (6) all other practical problems that make trial of a case easy, expeditious, and inexpensive; and (7) factors of public

> interest, including the relative congestion of court dockets and a preference for holding a trial in the community most affected.

*Terry v. Walker*, 369 F. Supp. 2d 818, 822 (W.D. Va. 2005) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)). Other federal courts have set out alternative or additional factors, some of which can be fairly said to overlap. The result is a great many structural permutations of § 1404(a) analysis, even among courts in the same circuit or district. In the end, however, the structural differences seemingly bear little on the courts' ultimate decisions to transfer or retain cases, provided that all relevant factors are appropriately considered. For the sake of consistency, I have structured my analysis herein in accordance with *Terry* and *Gilbert*, since I cited those cases in another recent venue transfer analysis. *See Rust v. CommerceFirst Bank*, Civil Action No. 3:07cv00052, 2008 WL 2074071, at *4–5 (W.D. Va. May 14, 2008).

**1. Plaintiffs' Chosen Forum**

The plaintiff's choice of forum is entitled to deference, especially where the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action. *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011) (citation and internal quotation marks omitted); *Glamorgan Coal Corp. v. Ratners Group, PLC*, 854 F. Supp. 436, 437 (W.D. Va. 1993). That said, "[t]he level of deference to a plaintiff's forum choice 'varies with the significance of the contacts between the venue chosen by the plaintiff and the underlying cause of action.'" *Pragmatus*, 769 F. Supp. 2d at 995 (quoting *Bd. of Trustees v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256 (E.D. Va. 1988)). When "there is no nexus to [the plaintiff's chosen district] and the plaintiff's underlying claim," courts have not hesitated to transfer the case. *Glamorgan*, 854 F. Supp. at 438. In directing a transfer of venue in *Glamorgan*, Judge Turk noted that although the plaintiff filed in its home—the Big Stone Gap

division of the United States District Court for the Western District of Virginia—"the cause of action arose in New York and London [where the stock purchases giving rise to the plaintiff's claims took place], not Virginia." *Id.*

Defendant insists that Plaintiffs' choice of venue should be accorded minimal weight because the operative facts of the case occurred outside of the Western District of Virginia. Specifically, Defendant avers that the research, development, engineering, manufacture, and sale of Continental's REDI-Sensor occurred in Troy, Michigan. Moreover, Defendant asserts that its two Virginia-based facilities are simply not affiliated with the accused REDI-Sensor; instead, Defendant claims that those facilities are involved with automobile fuel injection and brake manufacturing. Defendant also discounts the importance of any sale of the accused REDI-Sensor in this district, since Defendant makes and sells aftermarket parts throughout the United States. Because "[s]ales activity alone does not establish a substantial connection to the forum," *Augme Techs., Inc. v. Gannett Co.*, No 3:11CV282-HEH, 2011 WL 3207188, at *3 (E.D. Va. July 26, 2911), and because the forum choice of a mere sales agent that has no evidence material to the cause of action is entitled to "less deference than it is typically accorded," *Convergence Techs., LLC v. Microloops Corp.*, 711 F. Supp. 2d 626, 643 (E.D. Va. 2010), Defendant insists that Plaintiffs' choice is due little regard from the Court.

In response, Plaintiff argues that Defendant has downplayed Schrader-Bridgeport's strong connection to this district. Pls.' Opp'n 2. Plaintiff first describes Schrader-Bridgeport's role as the exclusive licensee by stating that Schrader-Bridgeport is "responsible for all aspects of the aftermarket TPMS business for Schrader, including management, sales, marketing, customer service, and inventory management and packaging." Pls.' Opp'n 2 n.1, 8. Moreover, Plaintiff emphasizes that this case is about *aftermarket* TPMS sensors, not OEM sensors, and

urges the Court to focus on Schrader-Bridgeport (which runs Schrader's aftermarket business), not Schrader Electronics (which runs Schrader's OEM business). *Id.* Indeed, Plaintiffs go as far as saying that Schrader Electronics "is a plaintiff in this case in name only, as the technical owner of the '495 patent." Pls.' Opp'n 2.

At bottom, Plaintiffs argue that Michigan has no meaningful connection to Schrader-Bridgeport's day-to-day operations. Pls.' Opp'n 9. According to Plaintiffs, it is the Schrader-Bridgeport business that is most impacted by the alleged infringement, and because the Schrader-Bridgeport personnel are located here in the Western District of Virginia, and Schrader-Bridgeport elected to file here, the case should remain here.

I conclude that the connection between the instant lawsuit and the Western District of Virginia is rather tenuous. While the Western District of Virginia is Plaintiff Schrader-Bridgeport's home forum, the contacts between the Western District of Virginia and the underlying cause of action—patent infringement—are, as discussed elsewhere in this memorandum, not very strong. While Schrader-Bridgeport sells and markets the EZ-Sensor in this district, and its business located here is indeed affected, the infringing activities did not occur here. Like in *Glamorgan*, this action "arose" elsewhere.[7]

Moreover, Plaintiffs' argument that Schrader Electronics is a plaintiff "in name only" is unpersuasive. The reason that a patent owner like Schrader Electronics must be involved in a suit asserting patent rights is "to prevent a party with lesser rights [like Schrader-Bridgeport] from bringing a lawsuit that may put the licensed patent at risk of being held invalid or

---

[7] Of course, broadly, this case "arises" under the federal patent laws, and jurisdiction and venue are proper in this district. More specifically, however, the Federal Circuit has held that one of the five elements required to state a claim of infringement is "(4) the infringing activity . . . ." *Anatomy of a Patent Case* 29, Federal Judicial Center (2009) (citing *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000)). According to Plaintiffs' Complaint, the alleged infringing activities in the instant case include Continental's manufacture, import, and sale of the REDI-Sensor, Compl. ¶¶ 24–28, which took place, for the most part, in the Eastern District of Michigan.

unenforceable in an action that did not involve the [patent owner, Schrader Electronics]." *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1344 (Fed. Cir. 2006). To argue that Schrader Electronics's presence as a plaintiff is only a matter of procedural compliance understates the importance of this matter to Schrader Electronics.

Accepting, then, that Schrader Electronics is actually a valuable party to the instant litigation, i.e., not a plaintiff "in name only," two of the three parties before the Court are principally located in the Eastern District of Michigan. Furthermore, while Schrader-Bridgeport is indeed located in Altavista, Virginia, Schrader-Bridgeport's status does appear to be something akin to a "sales agent," and its location weighs relatively lightly on the transfer decision. Even accepting Schrader-Bridgeport's statements that it is responsible for all aspects of Schrader's TPMS business, including management, sales, marketing, customer service, and inventory management and packaging, it is unclear whether and to what extent those responsibilities are relevant to the alleged *patent infringement*. Further accepting Schrader-Bridgeport's argument that Michigan has no connection to Schrader-Bridgeport's day-to-day-operations, it is also unclear whether and to what extent Schrader-Bridgeport's day-to-day operations are relevant to issues likely to be contested in the alleged *patent infringement*. While it is true that Schrader-Bridgeport is the patent-in-suit's licensee, I am not persuaded that much relevant evidence or testimony would originate from Schrader-Bridgeport's operations center in Altavista. As such, Plaintiffs' chosen forum is not dispositive, and I proceed to consider other factors.

### 2. Relative Ease of Access to Sources of Proof

In the digital age, this factor has become increasingly less important. *See, e.g.*, 15 Charles Alan Wright, et al., *Federal Practice and Procedure* § 3853 (3d ed. 2011) ("[S]ince

most records and documents now can be transported easily or exist in miniaturized or electronic form, especially, for example, the ubiquitous e-mail, their location is entitled to little weight.").

Despite the foregoing diminution, this factor still weighs slightly in favor of a transfer, since the evidence most germane to this patent infringement proceeding would be in the possession of the inventors and the corporate entities to which the inventors sold the '495 patent. While some sources of proof might be in the possession of Schrader-Bridgeport here in the Western District of Virginia, those sources are of less consequence to the issues likely to arise at trial.

### 3. Availability of Compulsory Process

Availability of non-party witnesses at trial in this district is in some doubt due to travel distance and expense. *See* Fed. R. Civ. P. 45(c)(3)(B)(iii) (permitting a court issuing a subpoena to quash or modify a subpoena if it requires "a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial."). Defendant claims, without support, that certain important non-party witnesses might not be willing to travel to this district to testify, and could not be compelled to do so. On the other hand, these witnesses could be compelled to testify by subpoena—with only minimal costs of attendance—in the Eastern District of Michigan.

In response, Plaintiff cites *MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*, No. 3:09–cv–00078, 2010 WL 2757351, at *7 (W.D. Va. July 13, 2010) and other cases for the proposition that the party seeking transfer *produce evidence* supporting the proposition that witnesses would only be willing to testify, or be deposed, pursuant to the Court's compulsory process. *See also Litton v. Avomex Inc.*, No. 08–CV–1340, 2010 WL 160121, at *18 (N.D.N.Y. Jan. 14, 2010); *Clark v. Bucyrus Int'l*, 634 F. Supp. 2d 814, 820 (E.D. Ky. 2009); *Manela v.*

*Garantia Banking Ltd.*, 940 F. Supp. 584, 592 (S.D.N.Y. 1996) ("Defendants . . . have failed to produce evidence, or even to allege, that [a potential witness in Brazil] would be unwilling to testify in New York.").

While the Court might reasonably find some truth Defendant's unsupported suppositions, Defendant has failed to make the allegations or proffers required by *MicroAire* and related cases. This factor—which, with proper support, would weigh heavily in Defendant's favor—is therefore neutralized.

### 4. Cost of Obtaining Attendance of Willing Witnesses

"Witness convenience is often dispositive in transfer decisions." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 636 (E.D. Va. 2003). Although "the influence of this factor cannot be assessed in the absence of reliable information identifying the witnesses involved and specifically describing their testimony," *id.*, it seems that the inventors, the prosecuting attorney, and the owner of the intellectual property while the application was pending would be sought out to provide testimony in the instant case.

This factor weighs heavily in favor of a transfer. As noted below, many of the witnesses who could provide testimony concerning issues relevant to the patent infringement claims reside in the Eastern District of Michigan. While Plaintiff Schrader-Bridgeport argues that certain individuals under its employment would also provide relevant testimony, I find that those individuals are few in number and light in substance. Below, I consider party witnesses and non-party witnesses separately.

### a. Non-party Witness Convenience

Defendant asserts that the six inventors listed on the face of the '495 patent, the '495 patent's prosecuting attorney, and the '495 patent's original corporate owner (Lear Corporation) all reside in the Eastern District of Michigan. Def.'s Mem. Exs. A, C, D. Plaintiff does not dispute these facts, but argues that the location of non-party witnesses should not override the deference afforded to a plaintiff filing in its home forum. Pls.' Opp'n 10.

The testimony of non-party witnesses will be critical in this infringement action. "Many of the claims and defenses that arise in patent infringement lawsuits such as inequitable conduct and validity, require the testimony of the inventors, the lawyers who filed the patent applications, and the owners of the intellectual property while the patent applications were pending." *Pragmatus*, 769 F. Supp. 2d at 996. Moreover, live testimony of important non-party witnesses at trial is preferred over reading their deposition testimony. *Glamorgan*, 854 F. Supp. at 438. While it is true that Plaintiffs' filing choice compels some deference, that factor is considered elsewhere. Non-party witness convenience, then, weighs quite heavily in Defendant's favor.

### b. Party Witness Convenience

Continental claims, contrary to Plaintiffs' assertions, that it is headquartered in the Eastern District of Michigan. Continental thus argues that all of its witnesses with relevant knowledge of the accused product are located within that district. Continental also argues that Plaintiff Schrader Electronics's key witnesses relevant to this litigation—including the individuals who were involved in the valuation and purchase of the '495 patent—are also located in the Eastern District of Michigan. Accordingly, Defendant argues that a transfer would not merely shift the inconvenience of travel to Plaintiffs, but would instead make litigation

objectively more convenient for Defendant as well as Plaintiff Schrader Electronics. Defendant notes that the driving distance from its headquarters in Auburn Hills, Michigan to Detroit is merely 35 miles, while the distance from Auburn Hills to Lynchburg is 625 miles.

When it comes to Plaintiff Schrader-Bridgeport, Defendant claims that Schrader-Bridgeport is likely to have fewer relevant witnesses, and would therefore be less inconvenienced by a transfer. Def.'s Mem. 14. Defendant argues that because Schrader-Bridgeport is "merely the exclusive licensee" for aftermarket sales, the only relevant testimony its witnesses could provide would be about sales figures in support of a damages calculation. *Id.* Moreover, Defendant argues that none of Schrader-Bridgeport's key witnesses are even located in Virginia because the EZ-Sensor was developed, manufactured, and validation tested elsewhere—in the United Kingdom and in the Detroit area. Def.'s Mem. 14–15.

Plaintiff avers that Mr. Kersi Dordi (Schrader-Bridgeport's General Manager), Rob McCorkle (Schrader-Bridgeport's Controller), Jay Poparad (an Schrader-Bridgeport engineer and TPMS project manager involved in EZ-Sensor development), David Jones (head of EZ-Sensor-related marketing), and the Schrader-Bridgeport customer service employees responsible for EZ-Sensor inquiries all reside in Virginia and would provide testimony. Pls.' Opp'n 9. These Virginia residents would clearly be inconvenienced by a transfer to the Eastern District of Michigan. To what extent they would provide testimony relevant to the patent infringement action, however, remains uncertain.

I assume that the witnesses that both parties describe would be at least somewhat relevant to material issues in dispute; however, because I do not believe that a raw comparison of each party's number of witnesses would be valuable to the transfer analysis, I deem this factor to be inconclusive, and therefore neutral.

### 5. Possibility of Viewing Premises

Neither party has suggested that viewing any physical premises might be required in the instant case. This factor is therefore not relevant to the transfer analysis.

### 6. Practical Considerations

Because the disposition of a related action filed elsewhere could have preclusive effects on an action filed in this Court, and because the two cases might share a number of common claims that would have to be construed under *Markman v. Westview Instruments*, 517 U.S. 370 (1996), the pendency of related actions is properly considered under this factor. A related action is currently pending in the Eastern District of Michigan. On October 13, 2011, Continental filed an action accusing Schrader's TPMS sensors, including the EZ-Sensor, of infringing Continental's U.S. Patents. *See* Def.'s Mem. Ex. H. Defendant argues that the Michigan action will require discovery similar to that required in this action. Def.'s Mem. 15. Citing *Glamorgan Coal*, 854 F. Supp. at 438, Defendant argues that it is in the interest of justice for a Michigan court to "supervise the discovery and adjudicate discovery disputes." Def.'s Mem. 16.

Plaintiffs call Continental's filing of a separate action "strategic[]." Pls.' Opp'n 8. Moreover, Plaintiffs argue that the counter-suit is only superficially related to the instant matter in that the Michigan suit generally involves TPMS technology and accuses the EZ-Sensor, *inter alia*, of infringing. *Id.* Finally, Plaintiffs argue that the Michigan case involves three separate Continental patents with different technologies, and Plaintiffs therefore dispute the suggestion that discovery will overlap between the two matters. *Id.*

The complaint in the case filed by Continental in the Eastern District of Michigan, *see* Def.'s Mem. Ex. H, alleges that both instant Plaintiffs infringed on U.S. Patent Nos. 6,998,973, 7,284,418, and 7,463,952, which are all related to TPMS systems. Assuming that Rule 13(a) of

the Federal Rules of Procedure governing compulsory counterclaims would not operate to dismiss Continental's claims in the Eastern District of Michigan, Continental seems to have properly brought a cause of action that, for all of the reasons already discussed herein, is proper in that district. All of the patents involve tire pressure technology, so it does appear that discovery and claim construal would at least in part overlap. While there may be some risk in giving too much weight to this factor, i.e., that doing so could incentivize parties seeking a transfer of venue in one lawsuit to file a separate (and perhaps even frivolous) lawsuit in the transferee venue, I find that this factor weighs in favor of transfer.

### 7. Public Interest Factors

#### a. Docket Conditions

Courts have also considered relative docket congestion in evaluating the suitability of a transfer under § 1404(a). After comparing the median time from filing a case to disposition in both districts (8.0 months in the Western District of Virginia and 8.4 months in the Eastern District of Michigan), Defendant argues that this factor is neutral. Def.'s Mem. 16. Plaintiffs dispute this conclusion, however, and assert that time to trial, and not median time for case disposition, is the appropriate metric by which to gauge docket conditions. Pls.' Opp'n 9. It comes as no surprise that the time to trial metric weighs strongly in favor of the Western District of Virginia, since time to trial here is about 12.5 months, while time to trial in the Eastern District of Michigan is roughly 22.3 months. *Id.*

It is of course true, as Defendant notes in its Reply, that most civil cases settle. Accordingly, both time to trial and time to disposition, as well as other measures, can be relevant congestion metrics. *See, e.g.*, *Texas Data Co. v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 645 (E.D. Tex. 2011) (noting that while time to trial is "most speculative," it is the preferred way to

measure docket congestion); *Kanbar v. U.S. Healthcare, Inc.*, 715 F. Supp. 602, 606 (S.D.N.Y. 1989) (noting that the Southern District of New York's status as the busiest docket in the nation counsels in favor of transfer, especially when the case had no substantial nexus to New York); *Stolz v. Baker*, 466 F. Supp. 24 (M.D.N.C. 1978) (considering case filings per judgeship, time to disposition, and time to trial).

While the Eastern District of Michigan is the "busier" docket in terms of the number of filings, it also has fifteen judgeships to the Western District of Virginia's four judgeships. The per-judgeship filings in the two districts are quite comparable.[8] Although the times to disposition are roughly equal between the two districts, time to trial in Michigan is significantly longer, so I find that this factor, while perhaps speculative, falls in the Plaintiffs' favor. In any case, most courts seem to agree that the congestion factor—whichever way it falls—is far from decisive, and it does not change my decision to transfer.

### b. *Preference for Holding Trials in the Community Most Affected*

"In a patent infringement action, as a general rule the preferred forum is that which is the center of the accused activity. . . . The trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *GTE Wireless*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999) (quoting *Santrade Ltd. v. Berndorf ICB Int'l Conveyor Belts, Inc.*, Civ. A. No. 6:92–2032–3 1992 WL 470482, *2 (D.S.C.1992)).

As noted above, the allegedly infringing device in this case—Defendant's REDI-Sensor—is most strongly connected to the Eastern District of Michigan. Like the infringing product in *Santrade*, "all development, testing, research, and production of the [REDI-Sensor]

---

[8] The per-judgeship filing numbers in the Eastern District of Michigan from 2006 through 2011 were: 409, 423, 408, 379, 388, and 421, respectively. The per-judgeship filing numbers in the Western District of Virginia over the same period were: 447, 411, 381, 367, 363, and 385. *See* Pl's Opp'n Ex. 5.

occurred in [Michigan]." *Id.* The REDI-Sensor has no connection, other than its eventual retail sales, to the Western District of Virginia. The cases cited above are, of course, not binding on this Court, but in choosing to adopt their analysis, I find that this factor weighs in favor of a transfer.

### c. Familiarity with Applicable Law

Patent law is governed by federal statute, *see* 35 U.S.C. §§ 1 *et seq.*, and this action is properly before any federal court. This factor is therefore neutral in the transfer analysis.

### IV. CONCLUSION

Having considered the factors appurtenant to transfer of venue analyses, I conclude that transfer is a proper exercise of my discretion under 28 U.S.C. § 1404(a). Although I do give some deference to Plaintiffs' decision to file in this district, Defendant Continental has carried its burden, and I will transfer the case in an accompanying Order, to follow.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this  15th  day of February, 2012.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE